RICHARD SALTONSTALL *vs.* THE PROPRIETORS OF THE BOSTON PIER OR LONG WHARF. LEVERETT SALTONSTALL *vs.* THE SAME. WILLIAM R. GOULD, JR., & Wife *vs.* THE SAME. JAMES C. MERRILL & Wife *vs.* THE SAME. ISAAC R. HOWE & others *vs.* THE SAME.

A grant of land, bounded " on the sea or flats," passes the flats appurtenant to the land granted.

In construing a deed of land, bounded "easterly on the sea or flats," a lease for years, made to the grantee by a former proprietor, and continuing at the date of the deed, of a shop standing on the land conveyed, and bounded " easterly on the sea or flats of the lessor," if admissible in evidence, has no tendency to prove that the flats appurtenant to the upland were not included in the deed.

THESE were writs of right, dated the 27th of February, 1849, in which the demandants, as the grandchildren and heirs at law of Nathaniel Saltonstall, claimed portions of the wharf and flats in Boston in possession of the tenants, as set forth in their respective writs; and were submitted to the court upon the following statement of facts:

The demanded premises were originally flats appurtenant to the possession of William Hudson, described in the Book of Possessions as " one house and yard, bounded with the street on the north, the bay on the east, Mr. Winthrop on the south, and Wm. Davies, Senior, west."

In 1678–9, Governor John Leverett died seised of the premises. In the division of his estate among his devisees, made on the 4th of September, 1707, " a piece of land and wharf at the bottom of the Town House Street, butting on the house in the occupation of Mr. Andrew Faneuil, merchant, with three warehouses and one cooper's shop thereon, together with a parcel of flats before the said wharf and thereunto belonging," were set off to Elisha Cooke and his wife, (a daughter of Governor Leverett,) and their son Elisha Cooke, Jr., (who had purchased the share of another daughter of Governor Leverett.) On the 13th of April, 1715, Elisha Cooke and wife, conveyed to Elisha Cooke, Jr., their interest in the estate so set off, describing it as " the aforesaid piece or parcel of land, and a wharf, warehouses, shops, and buildings thereon standing, a⁻ ⸌

the flats before the same," " fronting northerly on Town House Street, extending from the easterly side of the dwelling house in said Faneuil's possession into the cove or salt water." Elisha Cooke, Jr., died in 1737, and in the division of his estate, accepted by the probate court, November 4, 1763, there was set off, together with other estates, to his son Middlecott Cooke, " a wooden building in the occupation of Joseph Wheeler," " with the flats running down eastwards to low water mark, bounded north in the front on King Street, easterly on the sea or salt water, southerly on Benjamin's Peck's land, and westerly on the warehouse in Joshua Winslow's possession." Middlecott Cooke died in 1771, and by his will devised to his nephew, Nathaniel Saltonstall, " my warehouse in King street, now in possession of Mr. Isaac Winslow; as also the shop adjoining the same with all the flats before it, as set off in the division of my father's estate." The documentary evidence above set forth was put in by the demandants.

Nathaniel Saltonstall, under whom the demandants claim, on the 27th of December, 1771, conveyed to Caleb Loring by warranty deed, under which the tenants claim, " a certain piece of land situate at the lower end of King Street, in Boston aforesaid, on the south side thereof, bounded northerly on said street, there measuring thirteen feet six inches, easterly on the sea or flats, southerly or in the rear on land or flats now or late belonging to Mr. Peck, and westerly on the warehouse and land of me, the said Nathaniel Saltonstall, measuring in depth from front to rear forty eight feet, be said measures little more or less, or however otherwise bounded, together with the buildings on said land, with all the privileges and appurtenances thereunto belonging."

The demandants offer in evidence, to aid in the construction of this deed, two leases from Middlecott Cooke to Caleb Loring, of " a certain shop situate and being in King Street in Boston aforesaid, near the Long Wharf, bounded northerly upon King street aforesaid, westerly on the warehouse in possession of Joshua Winslow, Esquire, southerly upon Peck's wharf, so called, easterly upon the sea or flats belonging to said Cooke." One of these leases was dated September 25, 1758, and the

other March 25, 1765; the first for seven years, and the second for ten years from its date. The tenants deny that these leases are competent evidence for the purpose for which they are thus offered, and the question is submitted to the court, with the agreement that all the documentary evidence introduced by the demandants is to be used only, if at all, in aid of the construction of the deed from Saltonstall to Loring.

If, under this deed, the flats by law appurtenant to the premises described therein, or to the upland of which they were originally a part, passed, a verdict is to be entered for the tenants in each case, and judgment rendered thereon, with costs; otherwise, this statement is to be discharged, and the cases stand for trial.

*C. G. Loring* and *B. R. Curtis* for the demandants.    1. The deed from Saltonstall to Loring did not include the flats in question.    4 Cruise, (Greenl. ed.) 334, note 1; *Corbin* v. *Healy,* 20 Pick. 514; *Herrick* v. *Hopkins,* 10 Shep. 217; *Williston* v. *Morse,* 10 Met. 17, 27; *Law* v. *Hempstead,* 10 Conn. 23; *Davis* v. *Rainsford,* 17 Mass. 207, 210; *Tyler* v. *Hammond,* 11 Pick. 193; *Mayhew* v. *Norton,* 17 Pick. 357; *Jackson* v. *Boston & Worcester Railroad,* 1 Cush. 575, 578; *Storer* v. *Freeman,* 6 Mass. 435; *Green* v. *Chelsea,* 24 Pick. 71, 77; *Dunlap* v. *Stetson,* 4 Mason, 349, 365; *Hatch* v. *Dwight,* 17 Mass. 289.

The leases were competent evidence to aid in the construction of the deed.    4 Cruise, (Greenl. ed.) 306, note 1; *Adams* v. *Frothingham,* 3 Mass. 352; *Rider* v. *Thompson,* 10 Shepl. 244; *Lunt* v. *Holland,* 14 Mass. 149; *Sparhawk* v. *Bullard,* 1 Met. 95.

*S. Bartlett* and *W. Sohier* for the tenants.    1. The flats in question passed by the deed from Saltonstall to Loring. *Mayhew* v. *Norton,* 17 Pick. 357; *Storer* v. *Freeman,* 6 Mass. 435, 440; *Green* v. *Chelsea,* 24 Pick. 71, 77; *Adams* v. *Frothingham,* 3 Mass. 352.    Doubtful words are to be construed most strongly against the grantor. Bac. Ab. Grants, I. 1.    To include the flats is the only way to give effect to both terms; we must suppose that the grantor, in using the words " by the sea," meant to include the flats to the extent allowed by the ordinance, and added the words " or flats " to take effect in

17 *

case the one hundred rods granted by the ordinance should not reach low water mark.

But even if the boundary were merely " by the flats," the flats would pass, in this case, as appurtenant to the wharf conveyed; *Ashby* v. *Eastern Railroad,* 5 Met. 368, 369; *Doane* v. *Broad Street Association,* 6 Mass. 332, 334; *Thayer* v. *Payne,* 2 Cush. 327; especially having been originally located with this lot, in the division of Governor Leverett's estate. *Jackson* v. *Boston & Worcester Railroad,* 1 Cush. 575, 580.

2. The leases are not admissible in evidence to aid in the construction of the deed. *Green* v. *Chelsea,* 24 Pick. 71; *Doe* v. *Webster,* 4 P. & Dav. 270; *Doe* v. *Holton,* 5 Nev. & Man. 391 *Doe* v. *Chichester,* 4 Dow, 65; *Webster* v. *Atkinson,* 4 N. H. 21 · *Lowell* v. *Robinson,* 4 Shepl. 357; *Allen* v. *Kingsbury,* 16 Pick. 235. But, if admitted, they would not prove that Loring took no more by a purchase of a wharf, than by a lease of a shop from a different person.

FLETCHER, J.   These are writs of right, in which the demandants claim, as grandchildren of Nathaniel Saltonstall, a portion of the wharf and flats in possession of the tenants, as set forth in the respective writs.   It appears that Governor Leverett died seised of the demanded premises, and that the title passed from him through various devises, partitions and conveyances, to Middlecott Cooke, who became the sole owner in 1763.   The said Cooke, in 1771, devised the demanded premises to Nathaniel Saltonstall the demandants' ancestor, under whom the demandants claim, who, on the 27th of December, 1771, duly executed a conveyance to Caleb Loring, under which the tenants claim.   If, under this deed, the flats by law appurtenant to the premises described in the deed, or to the upland of which they were originally a part, passed, then by the agreement of parties, a verdict is to be entered for the tenants in each of the cases, and judgment rendered thereon, with costs; otherwise the statement of facts is to be discharged, and the cases to stand for trial.

The only question, therefore, presented for the consideration of the court, upon the statement of facts, is as to the con-

struction of the deed of Nathaniel Saltonstall to Caleb Loring. The description of the premises conveyed in that deed, is as follows : " A certain piece of land situate at the lower end of King Street, in Boston aforesaid, on the south side thereof, bounded northerly on said street, there measuring thirteen feet and six inches, easterly *on the sea or flats*, southerly or in the rear on land or flats now or late belonging to Mr. Peck, and westerly on the warehouse and land of me, the said Nathaniel Saltonstall, measuring in depth from front to rear forty eight feet, be said measures little more or less, or however otherwise bounded, together with the buildings on said land, with all privileges and appurtenances thereunto belonging." It appears by the documentary evidence in the case, that there was a building, and the land under it, embraced in the above conveyance ; and the question is, whether the flats situated in front of this building and land, below high water mark, passed by this conveyance. The case finds, that the demanded premises were originally flats appurtenant to the possession of William Hudson, which possession of Hudson is styled in the Book of Possessions " one house and yard," the boundaries of which are particularly set out. This possession of Hudson, with the flats appurtenant, came by various conveyances to Nathaniel Saltonstall.

By the colony ordinance of 1641, " it is declared, that in all creeks, coves, and other places about and upon salt water, where the sea ebbs and flows, the proprietor, or the land adjoining, shall have propriety to the low water mark, where the sea doth not ebb above a hundred rods, and not more wheresoever it ebbs further : provided that such proprietor shall not, by this liberty, have power to stop or hinder the passage of boats or other vessels, in or through any sea, creeks, or coves, to other men's houses or lands." Anc. Chart. 148.

By virtue of this ordinance, Nathaniel Saltonstall, at the time of making his deed to Caleb Loring in 1771, owned the flats appurtenant to the messuage then owned by him, but formerly owned by William Hudson, and when he conveyed the messuage with the appurtenances, the flats passed as appurtenant, unless the operation of the deed was restricted, by

the terms of it, so as to confine the grant to the land or mes-
suage, to the exclusion of the flats. It was within the power
of Nathaniel Saltonstall, the grantor, to convey the land with-
out the flats, or the flats without the land; he being the law-
ful owner and proprietor of both, with the right and power to
dispose of both or either at his pleasure.

What was in fact conveyed by the deed from Saltonstall, must
be determined by a construction of the terms of the deed itself.
The terms of the deed, upon which the question arises, are "east-
erly on the sea or flats." If the deed had said only " easterly
on the sea," the expression " on the sea," would undoubtedly
have carried the grant to low water mark, and have included
the flats. The expression " on the sea," legally and technically
imports low water mark. If, on the contrary, the deed had
said only " easterly on the flats," that form of expression
would have limited the grant to the upper part of the flats,
and would have excluded the flats, between high and low water
mark, from the grant. But the deed says both " on the sea or
flats."

On the part of the demandants, it is maintained, that the
true construction is to consider the expression, " on the sea or
flats," as meaning to bound on the sea, when it is high water,
and on the flats, when it is low water; and that by thus hav-
ing a shifting boundary, sometimes water and sometimes flats,
effect can be given to all the words, and the flats excluded
from the grant; so that the flats have come to the demandants
from their ancestor, Nathaniel Saltonstall. But that con-
struction is inconsistent with the established legitimate import
of the terms " on the sea;" that part of the description of the
grant being made to yield to the subsequent expression " or
flats," this being most favorable to the grantor.

On the other hand, it is maintained, on the part of the
tenants, that the terms " on the sea " carry the grant to low
water mark, and include the flats; the other expression, " or
flats," being made to correspond with the former part of the
description. This exposition is inconsistent with the techni-
cal import of the term, " or flats," and is most favorable to the
grantee.

Here are two different constructions of this deed, the one excluding the flats from the grant, the other including them, one of which must be adopted ; but it would be very difficult, perhaps impracticable, to say which, if there were no settled rule of law applicable to the case. But happily there is a well settled and intelligible rule of law precisely applicable to this case, and by the application of which, the difficulty in the construction of this deed may be completely and satisfactorily overcome. That rule is, that the terms of the deed, being those used by the grantor, shall be taken and construed most strongly against him. The construction of the deed to be adopted, therefore, must be that which is most favorable to the grantee, and most strongly against the grantor.

The question is, does the grant include or exclude the flats ? The boundary as expressed in the deed is " easterly on the sea or flats." Construing the deed, so as to give to the word " sea " its technical and legitimate import, will carry the grant to low water mark and include the flats ; and this construction is not only permitted, but required by the legal and established rule of construction, as being most favorable to the grantee and most strongly against the grantor. The word " flats " must be presumed to have been used, not in a strictly accurate and technical sense, but in a sense corresponding with that of the word " sea," in connection with which it is used. The grantor cannot be supposed to have intended different things by the expression " sea or flats ; " and having fixed the boundary " easterly on the sea," he cannot be supposed to have intended to abandon the bound thereby fixed, by the succeeding words " or flats."

There are several cases which favor the construction here put on the word " flats." In *Storer* v. *Freeman*, 6 Mass. 435, 441, a boundary line was described as running to a heap of stones by the shore at Elwell's Corner. The word " shore " was considered as of the same import as flats. Parsons, C. J., in giving the opinion of the court, says : " The shore has two sides, high water mark, and low water mark. Elwell's Corner is described as a known monument. If it is at low water mark, it is by the shore, as well as if it was at high

water mark. Now, if it be a fact that this corner was a known monument at low water mark, the plaintiff might be admitted to prove it by oral testimony. Then the boundary line running to Elwell's Corner would cross the flats to low water mark; and the next boundary line running by the flats must run by the same side of the flats on which Elwell's Corner stands; and thus the flats would be included by the boundaries of the land conveyed by the second deed." "And we should presume that the word shore was used, untechnically and without legal accuracy, as importing low water mark." In the case of *Mayhew* v. *Norton*, 17 Pick. 357, the words of boundary employed in the deed were, "by the harbor of Edgartown." The court understood these words as equivalent to bounding by the sea or salt water, and thus including the flats; such appearing to be the intention of the parties. In the case of *Jackson* v. *Boston & Worcester Railroad*, 1 Cush. 575, 579, one of the boundaries in the deed was, "at the rear of the westerly end by the flats;" and the court say: "Now, as it appears by the language of the deed that the whole lot was intended to be conveyed, and as it is bounded by the rear of the lot of the westerly end, it does not seem to be a strained construction to hold that the flats passed by the deed."

The demandants offer in evidence, to aid in the construction of the deed of Saltonstall to Loring, two leases of Middlecott Cooke to Caleb Loring, the one dated September 25th, 1758, and the other March 25th, 1765. The tenants denied that these leases were competent evidence for the purpose for which they were offered.

In the opinion of the court, if these leases were admissible and admitted, they would not affect the question as to the construction of the deed of Saltonstall to Loring. By the leases, Cooke demises to Loring the shop standing on the premises contained in the deed, by the one lease for the term of seven years, and by the other for ten years; and by the boundaries given in the leases, it is supposed to be clear, that the flats will not pass; and it is now said, that the fact of the flats not being conveyed in the leases tends to show that it was

not intended to convey them in the deed. But it seems to the court that the fact, that the flats were not included in the leases, can have no tendency whatever to show that they were not included in the deed. The leases were not made by the same person who made the deed; and the lessee, who took the use of the shop merely for a term of years, might not deem the flats of any value at all to him, in connection merely with the use of the shop. But when the lessee came to acquire an absolute title to the shop and land, he might then think it important to acquire a title to the flats; and the description of the granted premises in the deed is different from that in the leases. Though the flats were not included in the leases, they were not severed from the upland, but remained still annexed to the fee; and the flats and upland came together to Nathaniel Saltonstall in fee, and were by him conveyed together in fee to Caleb Loring, so that the demandants have no title to the demanded premises derived from their ancestor, Nathaniel Saltonstall.

*Judgment for the tenants.*